JINSHU JOHN ZHANG (Bar No. 166981)
john.zhang@dentons.com
JAE K. PARK (Bar No. 234474)
jae.park@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys for Plaintiff
YOTRIO CORPORATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOTRIO CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN COOP, an individual; and 3i PRODUCTS, INC., a South Carolina Corporation,<br><br>Defendants. | Case No. 2:18-CV-10101<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT FOR:**<br><br>**VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1836, ET SEQ.; MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA UNIFORM TRADE SECRETS ACT (CAL. CIV. CODE § 3426.1); BREACH OF CONTRACT; TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS, TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS, AND VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW** |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Plaintiff Yotrio Corporation ("Yotrio" or "Plaintiff") hereby files this Complaint for damages and permanent injunctive relief against Defendants Jonathan Coop ("Coop") and 3i Products, Inc. ("3i") (collectively, "Defendants") for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"); the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*, breach of contract, tortious interference with prospective economic relations and tortious interference with contractual relations under California common law, and violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) and alleges as follows:

## I.     PARTIES

1.     Plaintiff Yotrio Corporation is a California corporation with its principal place of business located at 1100 Coiner Court, City of Industry, California 91748.

2.     Defendant Jonathan Coop is a resident of, and is domiciled in, Long Beach, California.

3.     Defendant 3i Products, Inc. is a South Carolina Corporation with its principal place of business at 3888 Chester Highway, Lancaster, South Carolina 29720.

## II.     JURISDICTION AND VENUE

### Personal Jurisdiction

4.     This Court has personal jurisdiction over Coop because he is a resident of California.  This Court also has personal jurisdiction over 3i under California Civil Code of Procedure § 410.10 because 3i transacted business within this State, committed tortious acts within this State, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the California Constitution.

### Subject Matter Jurisdiction

5.     This Court has subject matter jurisdiction over the federal claim in this action, Defend Trade Secrets Act, pursuant to 28 U.S.C. § 1331 and over the pendent

1    state law claims pursuant to 28 U.S.C. § 1367(a).

2                                    **Venue**

3        6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)

4    against Coop because claims alleged herein arose in this District and a substantial

5    part of the wrongful acts alleged herein occurred in this District, namely Coop was

6    employed to work for Yotrio in this District, signed the relevant Agreement in this

7    District, and misappropriated Yotrio's trade secret and confidential/proprietary

8    information within this District, and was hired by 3i in this District.

9        7.      Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

10   against 3i because it transacts business in this District, hired Coop in this District,

11   and therefore 3i has sufficient minimum contacts with this District.

12                          **III.    BACKGROUND**

13       8.      Yotrio is a wholly-owned subsidiary of Yotrio Group Co., Ltd. ("Yotrio

14   Group"), one of the world's leading manufacturers and distributors of high-quality

15   leisure outdoor furniture products with annual sales over $500 million.

16       9.      Yotrio Group is an industry leader in developing and implementing

17   innovative outdoor furniture with superior quality, exceptional design, and top-notch

18   customer service.

19       10.     Founded in 1990, Yotrio Group is a majority-family owned company

20   whose stock is listed on the Shenzhen Stock Exchange.

21       11.     As part of its core business, Yotrio employs a talented group of

22   designers in order to design, fabricate, and sell a wide range of outdoor furniture

23   around the world, such as chairs, tables, lounges, benches, *etc*., for different

24   customers.

25       12.     Yotrio's products are created using a myriad of different combination

26   of materials, including real and synthetic wood, aluminum, wicker, steel, and

27   different fabrics -- all of which result in various price points.

28       13.     The furniture product offerings incorporate aesthetics, functionality,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

durability, and safety, and are consistently up-to-date with market trends based on changing customer taste. The furniture designs also incorporate shipping considerations, including the packaging and box sizes.

14.     All of Yotrio's products must pass rigorous quality control, safety, durability, and environmental tests, as well as specific customer requirements.

15.     Due to its extensive experience in the marketplace, Yotrio has cultivated a robust supply chain and delivery network, including manufacturers, suppliers, shippers, and warehouse storage.

16.     Yotrio primarily works with manufacturers and suppliers in China to fabricate and produce different lines of furniture products, which are then exported internationally, including to the United States, Canada, and Mexico.

17.     Yotrio's extensive product lines are sold under various trade names to big box retailers in North America.

### IV.   JONATHAN COOP'S EMPLOYMENT

18.     Jonathan Coop was hired on February 13, 2012 as a furniture designer for Yotrio.

19.     In this position, Coop was a key member of the Yotrio Design team, and was responsible for all aspects of outdoor furniture design, including selecting materials, designing and assembling components.

20.     Because Coop was involved with every aspect of Yotrio's furniture designs, he was privy to extensive knowledge and information related to Yotrio's sales and customer preferences, and interfaced with customers frequently.

21.     Particularly, Coop was assigned to Top Customer[1] - one of Yotrio's most significant customers that accounts for a substantial part of Yotrio's revenue in North America -- but also did design work for other Yotrio customers.

22.     Throughout the years, Coop led the Design team that regularly worked

---

[1] The identity of Yotrio's customer has been redacted in this public filing, and will be referred to as "Top Customer" in this pleading due to potential confidentiality obligations under a supplier agreement.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

and collaborated with Top Customer to design and develop product lines for sale at Top Customer.  At the same time, Coop received progressively more responsibilities with corresponding salary increases and annual performance bonuses.

23.    Although Coop was initially hired as a designer, he rose through the ranks to become a director-level designer within a few years of working at Yotrio.

24.    During that time, Coop worked extensively with the Sales team, interfaced with customers, communicated frequently with Yotrio's suppliers and manufacturers for sourcing and supply chain purposes, and then updated designs each year in response to customer needs.

25.    As part of Coop's employment with Yotrio, he was issued a company cell phone, high-performance laptop specialized for use by designers, and other materials including USB flash drives to accommodate his need to transfer information to manufacturers, suppliers, team members, and customers during his frequent travels on behalf of Yotrio.  He was also provided with a company-expense account to accommodate his relatively frequent travels.

26.    During this time period, Coop traveled to China 4-5 times per year to meet with various suppliers and manufacturers to support his design role.  He also traveled across the United States and Canada to attend customer meetings to present, review, and solicit feedback for furniture designs.

## V.    THE PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

27.    As an indispensable employee with extensive access to and knowledge of sales figures, margins, marketing strategies, and key customer information, Coop was required by Yotrio to sign a "Proprietary Information and Inventions Agreement" (the "Agreement") on February 13, 2012 prior to his employment with Yotrio. (Exhibit A).

28.     The Agreement, which is valid and enforceable, and necessary to protect the trade secret and confidential information of Yotrio, is governed under

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

California law.

29.     Paragraph 4 of the Agreement states the following in relevant part:

I agree that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employers) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information." **I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information.** However, I shall not be obligated under this paragraph with respect to information I can document is or becomes readily publicly available without restriction through no fault of mine. Upon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (i) my compensation records; (ii) materials distributed to shareholders generally and (iii) this Agreement. I also recognize and agree that I have no expectation of privacy with respect to Company's telecommunications, networking or information processing systems (including, without limitation, stored computer files, email messages and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice. (Emphasis added).

30.     Paragraph 8 of the Agreement further provides, and Coop agreed, that "my obligations under paragraphs 2, 3, 4, and 5 of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part…"

31.     Yotrio has performed each and every aspect of the Agreement through continued employment of Coop.

## VI.  YOTRIO'S CONFIDENTIAL AND TRADE SECRET INFORMATION

32.     As an outdoor furniture manufacturer and designer in a competitive marketplace, Yotrio's customer relationships, designs, product pricing, suppliers and other proprietary business information and customer data are of paramount

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

importance.

33.     Yotrio has expended significant time, resources, and energy to create, accrue, and organize proprietary information so that it may better serve its customers, and also to anticipate customer needs.  For example, knowledge of a particular customer's preferences, purchasing history, and success with particular product lines allows Yotrio to anticipate such needs and make accommodations with its designs and supply chain, and allocate resources to accommodate that particular customer. Such in-depth knowledge provides Yotrio with a competitive edge in the marketplace.

34.     As a key designer at Yotrio, Coop was provided direct access to Yotrio's confidential/proprietary and trade secret information concerning Yotrio's sales history, pricing and forecast, customer list and preferences, confidential marketing materials and campaigns, and market growth/expansion strategies.

35.     The Yotrio Design team, in which Coop was an important member, collaborate with one another and with customers to produce designs for outdoor furniture products to suit the particular customer's needs and preferences.  The Design team also works closely with the Sales team to provide quality customer service.  Because of this symbiotic relationship, both the Sales and Design teams frequently collaborate and share proprietary documents and customer information to carry out the core business functions at Yotrio.

36.     In order to share documents, customer information, and designs efficiently and expeditiously, members of the Sales and Design teams, at Yotrio's behest and encouragement, signed up for a Dropbox, a third-party cloud-based hosting service that uses "cloud" storage to enable users to store and share files with others across the Internet using file synchronization.

37.     Coop, as a key designer of Yotrio's products, was granted administrative access to the Dropbox account (designbox@yotrioint.com).  As an administrator, Coop had access to, and was able to share information compiled by Yotrio personnel

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

with anyone outside of the Yotrio network.  Dropbox files are customer-specific, and certain files (such as furniture designs and marketing information) can be shared with customers as necessary.

38.    The Dropbox accounts used by Yotrio's employees, including Coop, are password-protected, and the Dropbox account is synchronized with company-issued laptops and cell phones.

39.    Coop knew, or should have known, that the information shared between the Yotrio Design and Sales teams is to be kept strictly confidential, not to be shared with any unauthorized personnel or competitors, and to be used to advance Yotrio's business purposes only.  This was aptly demonstrated by the Agreement that Coop signed on February 13, 2012 prior to his employment at Yotrio, which other members of the Yotrio Design and Sales teams have also signed.

40.    Yotrio also utilized a file transfer protocol (FTP) site, hosted by Yotrio servers, in order that Yotrio personnel could upload and transfer files with team members in China.  The FTP site is password-protected and access is only provided to specific personnel and customers.

41.    The confidential and trade secret information to which Coop had direct access, included the following:

42.    **Yotrio Furniture Designs**:  Yotrio's furniture designs are the "life blood" in the outdoor furniture industry.  The designs are proprietary and based upon extensive annual collaboration with customers, a deep understanding of customer needs and changing market trends.

     a.  New designs are essential to maintain current business and also open up opening up new business and increasing sales.

     b.  Designs are proprietary and specific to each customer's unique preferences developed through a collaborative process, which require extensive time, capital, and research in order to accommodate and adjust to specific customer needs.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

c. Each design also takes into account different component suppliers and manufacturers in order to accommodate specific customer preferences.

d. Designs that are not selected by the customer ultimately remain confidential to Yotrio and may be used for subsequent cycles.

e. Coop had access to, and in fact developed, many of the proprietary furniture designs on behalf of Yotrio, particularly with respect to Top Customer.

43. **Yotrio Market Intelligence:**  Based upon longstanding customer relationships, Yotrio has collected extensive information related to specific customers and their particular needs, preferences, objectives, and price sensitivities.

a. This information is highly valuable to Yotrio because the market intelligence data is a culmination of years of ongoing efforts and collaboration with customers and collected from across the United States, as well as Canada, and requires thousands of employee hours to collect and update.

b. The market intelligence information supports the Sales function and informs Yotrio on its sales, design, and marketing strategies.

c. Customers, who are under an obligation of confidentiality, are presented with the market intelligence data in the form of charts and graphs, which are critical to support Yotrio's position with respect to new designs being presented to customers.

44. **Confidential Customer Sales Information:**  Coop was also provided, and had access to, confidential historic sales information pertaining to all of Yotrio's customers.  This information includes total sales, profit margins, growth areas, and list of prospective customers/targets.

a. The Confidential Customer Sales Information is a treasure trove of customer data obtained by Yotrio over the last ten years, and it would be devastating if such information were to fall into the hands of a direct

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

competitor.

b. The confidential customer information would provide a direct competitor with sufficient knowledge to craft direct plans to target specific customers and to unfairly compete against Yotrio.

45. **<u>Yotrio Customer Pricing</u>**: Yotrio has also developed specific pricing structures and total landing costs for each product line to specific customers. Each outdoor furniture product set is specifically priced based upon extensive market research, intelligence, sales history, manufacturing costs and profit margins, and experience with customers, as well as other considerations, including manufacturing, shipping, tariffs, and storage costs.

a. Aside from the Sales and Design team members, such pricing information is only shared with the designated customers, who are under an obligation to preserve its confidentiality.

b. Knowledge of Yotrio's pricing information and landing costs for specific products and customers would allow a direct competitor to undercut the price offerings and landing costs to a customer, thereby increasing the chances that the direct competitor could win the customer bid.

## VII. YOTRIO SAFEGUARDS TO PROTECT TRADE SECRETS AND PROPRIETARY INFORMATION

46. Each of the above-referenced trade secrets has independent economic value because of the time, resources, and energy expended to compiling the information. The information is not shared outside of Yotrio except to specific customers under confidentiality obligations. Yotrio has taken and continues to take appropriate steps to maintain the confidentiality of its trade secrets, including the following:

47. Employees with access to proprietary information and data, such as client databases, can do so only through a password-protected system and accounts.

48.     Yotrio requires all new employees to sign an agreement equivalent to the one Coop signed, which includes a specific confidentiality/proprietary clause.

49.     Yotrio also maintains rules and guidelines in its Employee Handbook for the use and handling of confidential and proprietary company information, including the use of email and personal devices.

50.     Yotrio's customers are required and expected to keep pricing information confidential.   Such information is also not shared with Yotrio's competitors.

## VIII.  JONATHAN COOP AND 3i PRODUCT, INC.'S MISCONDUCT

51.     In late 2017, as a result of internal conflicts with the Design team, Yotrio restructured its Design team whereby it decided to promote an individual from within the organization to become the Vice President of Design and Product Development in order to lead the Design team.

52.     After this promotion, Coop expressed frustration towards the restructuring, and had several talks with management concerning this topic.

53.     As a result, Coop started looking for alternative avenues for employment, including with Yotrio's direct competitors.

54.     Prior to the restructuring, Coop was assigned to, and was intricately involved with and knowledgeable in every facet of the customer relationship with Top Customer, including all design, sales, objectives, and preferences.

55.     Around the same time as the internal restructuring, Yotrio management reassigned Coop away from Top Customer and to another customer account, because Coop had made it known, through his deepening discontent with Yotrio management, that he was at risk of leaving the company.

56.     During this time, Coop requested and received significant proprietary and confidential information from Yotrio's China affiliates related to its most important customers.  These documents represented Yotrio's most sensitive historic and up-to-date customer information, including sales quantity, pricing and landing

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

costs, designs, and selections.

57.     As a designer, Coop did not have a legitimate business reason to request this information from the Chinese colleagues, nor were they supposed to be providing this comprehensive treasure trove of information to a US-based employee such as Coop.

58.     Plaintiff alleges upon information and belief that Coop requested this information as pretext to allow Coop to gain consolidated access to Yotrio's confidential/proprietary and trade secret information that Yotrio has spent many years compiling.

59.     The documents were shared with Coop and other members of the Yotrio Design and Sales teams via email, Dropbox, and FTP -- all of which are password-protected.

60.     After Yotrio's management team discovered that such information had been disseminated to other members of the Yotrio Design and Sales team, Yotrio's management team expressly informed its employees that the sales and customer information was highly confidential and should not have been disseminated.

61.     Plaintiff alleges upon information and belief that Coop downloaded and kept copies of these, and other, Yotrio documents and others in his personal possession and not for any legitimate Yotrio business purposes.

62.     From approximately May 23, 2018 to June 4, 2018, Coop requested, and was granted a business trip to China, purportedly for Yotrio business to review Yotrio's early development and innovation projects to assess Yotrio's development of new materials, manufacturing techniques, and new technology, and to meet with multiple supplier and manufacturing facilities.

63.     Unbeknownst to Yotrio, however, Coop was covertly gathering vital information for use with a potential new employer.  Such information included the contact information of key manufacturing personnel which would be extremely helpful for competitors to compete against Yotrio because Yotrio has identified and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

1    used specific suppliers over many years for specific product lines and customers.

2         64.    Plaintiff alleges upon information and belief that Coop gathered and

3    compiled significant contact information with key suppliers in anticipation of taking

4    this information to use at a new employer.

5         65.    On or around June 18, 2018, after Coop had returned from China, Coop

6    informed Yotrio that he would be working from home on that date, which was a false

7    statement.  Instead, Plaintiff alleges upon information and belief that Coop scheduled

8    an interview with 3i Products, Inc. in or around the Los Angeles area.

9         66.    3i Products is a direct competitor of Yotrio.  For many years, 3i has tried

10   repeatedly to encroach upon Yotrio's market share but without any success.  While

11   3i may be able to offer similar products, it does not have the supply chain,

12   relationship with manufacturers, design capabilities, and intimate customer

13   knowledge and relationships in order to deliver quality products on a timely basis to

14   the end-customer.

15        67.    This all changed when 3i identified Coop as an essential employee who

16   would be the  key to opening up new markets for 3i.

17        68.    During the job interview, Coop and 3i discussed specific customers that

18   3i would target once Coop was hired.  Coop would leverage his knowledge of

19   Yotrio's confidential/proprietary and trade secret information to provide 3i with a

20   distinct advantage.

21        69.    One significant customer that Coop discussed with 3i was Top

22   Customer, which was the main reason that Coop was solicited based upon his years

23   of direct dealings with Top Customer.

24        70.    Yotrio sells multiple product lines to Top Customer across North

25   America.  In addition to quality, and reliability, the most important factor driving Top

26   Customer's furniture buying decision is the product pricing, package size, and

27   landing costs of products.

28        71.    Over the 10 years that Yotrio has been in business with Top Customer,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

Yotrio has developed specific price points and landing costs for each of the different product lines and designs sold to Top Customer. Yotrio and Top Customer's longstanding business relationship has allowed Yotrio to forecast Top Customer's specific needs as a customer, understand and execute its objectives, and also to accommodate those needs through pre-planning.

72.     Knowledge of the aforementioned designs, pricing, cost, and other customer information would permit a direct competitor, such as 3i, to strategically, selectively, and effectively target sales efforts towards Top Customer in an attempt to unfairly compete against Yotrio.

73.     As noted above, Coop worked extensively on Yotrio's Top Customer account throughout his tenure at Yotrio, and obtained key insight into Top Customer's objectives, specific design preferences, and price points for specific product lines.

74.     3i was aware of Coop's position at Yotrio, his job responsibilities, and most importantly, his intimate knowledge of key customers such as Top Customer.

75.     3i and Coop agreed that Coop would work for 3i with the expectation that he would first direct efforts to securing Top Customer as a customer through the use of Yotrio's confidential/proprietary and trade secret information. Once secured, the plan would be to target other Yotrio customers and product lines.

76.     On June 23, 2018 (Saturday), Coop covertly uploaded a multi-page document from his company-issued laptop to a newly-created Staples.com account for professional printing and binding purposes. There was no legitimate business purpose for uploading and printing this information, particularly on a weekend immediately after his interview with 3i.

77.     On or about June 26, 2018 (Tuesday), Coop received an official offer of employment from 3i for a Design Director position (Exhibit B), which is the equivalent of the position that Coop held at Yotrio with the same responsibilities.

78.     In a draft email to 3i in which he authored, Coop wrote that "I'm very

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

excited and very much looking forward to joining your team… *Hopefully this gives enough time for [Top Customer] objectives due 7/27.*" (*italics* supplied).  This is a clear admission that 3i hired Coop specifically to solicit Top Customer for business.

79.   After Coop received his offer of employment, and immediately prior to Coop's resignation, Coop accessed, downloaded, and retained a confidential Top Customer document related to valuable new business opportunity for Yotrio from Top Customer.  This document is unique to Yotrio.  A competitor's access to this confidential document would provide a significant competitive advantage to the competitor because it would allow such competitor to direct its sales efforts towards Top Customer.  Yotrio's investigation is ongoing.

80.   On June 28, 2018, Coop submitted his two-week resignation from Yotrio effective on July 12, 2018. (Exhibit C).  Notably, Coop did not inform anyone at Yotrio that he was leaving to work for 3i, and in particular, on 3i's efforts to target and obtain the Top Customer business.

81.   Coop was terminated from Yotrio on the same day.  He would later sign a severance agreement, which does not release any claims by Yotrio against Coop.

## IX.  DISCOVERY OF TOP CUSTOMER VIOLATION

82.   The timing of 3i's hiring of Coop was designed to coincide with the traditional sales cycle in the outdoor furniture business such that 3i and Coop could strategically target Top Customer.

83.   Big box retailers such as Top Customer's selections typically take place in the 4th quarter of any given year for product sale two years later.  For example, a buying decision in the 4th quarter in 2018 would involve purchase orders for products that would be sold in 2020.  The extended timeline allows a manufacturer/supplier to ramp up production to meet purchase orders, conduct quality control, troubleshoot, ship to destination, and then store as inventory.

84.   During the beginning of the sales cycle, manufacturers/suppliers such as Yotrio meet with customers to present new furniture designs, market trends,

1   analysis, and sales information, including pricing.

2   85.   Customers generally hold multiple meetings with several

3   manufacturers/suppliers, and are typically presented with different selections of

4   different outdoor furniture designs to cater to each customer's specific business needs

5   and customer preferences.

6   86.   Customers undergo a collaborative process with Yotrio in order to revise

7   designs until the parties can agree to appropriate terms.

8   87.   It is routine for a customer, such as a big box retailer, to choose between

9   designs from several companies related to a particular outdoor furniture product set.

10   Different manufacturers compete based on design, quality, cost, and track record for

11   on-time delivery.

12   88.   In selling to customers, Yotrio and other furniture manufacturers share

13   design and pricing information with customers.  Such information is not expected to

14   be shared with any other competitor during the sales cycle.  Knowledge by a

15   competitor of Yotrio's designs with specific price points would significantly

16   undermine Yotrio's competitiveness with particular customers because a competitor

17   can use the pricing information to undercut Yotrio's pricing for a particular product.

18   89.   Due to thin profit margins in the industry, using ill-gotten Yotrio pricing

19   information to undercut Yotrio slightly below Yotrio's pricing points can yield huge

20   competitive advantages for a competitor of Yotrio as the competitor can beat Yotrio

21   on pricing without risking profitability.

22   90.   After the 4th quarter meetings, and final designs are presented, buying

23   decisions by customers are typically finalized in March of the following year.

24   91.   During the most recent sales cycle in October 2018, Yotrio learned that

25   Coop presented to Top Customer on behalf of 3i, that he specifically targeted Product

26   Line X[2], and that Yotrio is at risk of losing its Product Line X to 3i.

27

28   _____
[2] The specific product line, which is sold exclusively by Yotrio's customer, is referred to generically as "Product Line X" in this public filing.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

92.     Product Line X is sold exclusively to Top Customer and it consists of a 5-piece patio seating set with a fire-pit.

93.     Coop was the designer for Product Line X and was intricately involved with, and knowledgeable of, the design of furniture, materials, sourcing, packaging, assembly, and landing costs -- all of which are key components driving the sales purchase by Top Customer.

94.     Although several manufacturers have attempted to compete with Yotrio over many years, Yotrio has successfully and repeatedly won the bid and has supplied Top Customer with the Product Line X for the last five years.

95.     The continuity in the business relationship with Top Customer has allowed Yotrio to develop a reliable track record based upon its supply chain to ensure that products are assembled, manufactured, and delivered timely and within the landing costs as quoted.

96.     The only way that a competitor, such as 3i, could even come close to Yotrio is if it was knowledgeable of the specific product line and its landing costs, which are wholly proprietary/confidential to Yotrio.

97.     Coop was well-aware of Top Customer's objectives and timeline for sales presentations, having received, and upon information and belief, downloaded, maintained, and used a comprehensive Top Customer confidential document, exclusive to Yotrio, in direct breach of his confidentiality obligations.

98.     Plaintiff alleges upon information and belief that Coop misappropriated and used Yotrio's confidential/proprietary and trade secret customer information, including but not limited to Yotrio's pricing, to target, present, and sell to Top Customer with the specific intent to undercut Yotrio's pricing and win the business.

99.     In response to receiving notification from Top Customer concerning 3i's advances, Yotrio was forced to lower its price even further on the Product Line X in an effort to retain Top Customer's valuable business.

100.    After Coop resigned from Yotrio to work for 3i, and prior to the most

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

1  recent furniture sales cycle, Yotrio received notification from a key supplier in China

2  that Coop had been seeking to establish contact with the supplier on behalf of 3i.

3      101.  The only reason that Yotrio learned of this information was because

4  Yotrio Group had recently completed a deal to acquire the supplier, which then

5  informed Yotrio personnel of Coop's attempt to solicit business with them.

6      102.  Plaintiff alleges upon information and belief that Top Customer is the

7  beachhead target customer for 3i.  It is expected that 3i, with the direct assistance of

8  Coop, intends to selectively and effectively target other Yotrio customers to compete

9  unfairly based upon the misuse of Yotrio's proprietary/confidential and trade secret

10  information developed over many years, and also to co-opt and replicate Yotrio's

11  supply chain and manufacturing capabilities.

12      103.  On October 26, 2018, Yotrio sent Coop and 3i cease and desist letters

13  and a demand for preservation of documents and other materials. (Exhibit D).

14      104.  Through counsel, Defendants have denied acting improperly.

15      105.  Notwithstanding Defendants' denial, this suit is necessary to halt the

16  misappropriation and use of Yotrio's confidential/proprietary and trade secret

17  information by a direct competitor and former employee, to seek permanent

18  injunctive relief to prevent the continued use of such information, and also to seek

19  consequential and resulting damages as a result of Defendants' wrongful conduct.

20                          **FIRST CLAIM FOR RELIEF**

21          **(Violation Of Defend Trade Secrets Act -- 18 U.S.C. § 1836, *et seq.*)**

22                  **(Against Jonathan Coop and 3i Products)**

23      106.  Yotrio repeats all of the foregoing including, without limitation, the

24  allegations contained in paragraphs 1 through 105,  as if fully set forth in this

25  paragraph.

26      107.  A "trade secret" under the DTSA includes "all forms and types of

27  financial,   business…or   engineering   information,   including   patterns,

28  plans…designs…procedures..." that is (1) subject to reasonable measures to keep the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

information secret; and (2) derives independent economic value, real or potential, from not being generally known or readily ascertainable by others who can obtain economic value from the disclosure or use of the information.  18 U.S.C. § 1839(3).

108.   As set forth more fully above, Yotrio's confidential/proprietary trade secrets include, without limitation, Yotrio's Furniture Designs, Market Intelligence, Customer Sales Information, and Customer Pricing – all of which have been compiled through Yotrio's years of resource-intensive experience, trial and error, and communications with customers.

109.   The aforementioned trade secrets are subject to reasonable efforts to maintain their secrecy, including Yotrio's requirement that all key employees, such as Coop, sign a Proprietary Information and Inventions Agreement, and the Dropbox and FTP sites are password-protected.

110.   The aforementioned trade secrets also derive independent economic value from not being generally known to the public and have been derived through years of compilation, trial and error, and extensive collaboration with customers, all of which provide Yotrio with a competitive edge because the information allows Yotrio to allocate resources appropriately and to develop and execute business and marketing plans for specific customers.

111.   Coop had access to all of Yotrio's proprietary/confidential and trade secret information, including his knowledge of the password-protected Dropbox and FTP site accounts and email by virtue of his position as a director-level designer at Yotrio.

112.   Plaintiff alleges upon information and belief that Coop, along with his new employer, 3i Products, misappropriated and used Yotrio's proprietary/confidential and trade secret information in order to submit a bid to Top Customer for the Product Line X in direct, unfair competition with Yotrio.

113.   Plaintiff alleges upon information and belief that Coop and 3i intend to, and have improperly used Yotrio's confidential/proprietary and trade secret

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 19 -

1    information to target other key customers.

2       114.   Defendants' actions therefore constitute a violation of the DTSA, 18

3    U.S.C. § 1836 *et seq.*

4       115.   The trade secrets at issue relate to information concerning the sale of

5    outdoor furniture goods, which are distributed, shipped, and sold in interstate and

6    foreign commerce.

7       116.   As a direct, proximate result of Defendants' unlawful actions, Yotrio

8    has suffered damages, including lost profits, lost royalties, lost goodwill, diminished

9    profit margins, unjust enrichment based upon value of the property retained/loss, and

10   other damages to be determined at trial.

11      117.   The losses and harm to Yotrio are ongoing and cannot be remedied by

12   damages alone.

13      118.   Yotrio has no adequate remedy at law for sufficient compensation for

14   the wrongs committed by Defendants.

15      119.   Defendants acted willfully, maliciously, and with reckless disregard to

16   the rights of Yotrio, entitling Yotrio to recovery of double damages and recovery of

17   their reasonable attorneys' fees.

18       WHEREFORE, Yotrio demands judgment in its favor for Defendants'

19   violation of the Defend Trade Secrets Act, and requests actual damages to be proven

20   at trial, and multiplied damages, and permanent injunctive relief, including, but not

21   limited to, the immediate return of all of Yotrio's trade secrets, confidential

22   information and intellectual property, an Order directing Defendants to refrain from

23   using such confidential information and to cease using such information (and

24   information derived from such information), and granting attorneys' fees, and such

25   other and further relief available under the DTSA as this Court deems just.

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**SECOND CLAIM FOR RELIEF**

**(Misappropriation Of Trade Secrets – Cal. Civ. Code § 3426 *et seq.*)**

**(Against Jonathan Coop and 3i Products)**

120.    Yotrio hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1- 119 above.

121.    A trade secret under the CUTSA (Cal Civ. Code § 3426.1(d)) is defined as: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

122.    The information known to have been misappropriated by Defendants, including (1) Yotrio Furniture Designs; (2) Yotrio Market Intelligence Information; (3) Yotrio Confidential Customer Sales Information; and (4) Yotrio Customer Pricing constitute trade secrets under CUTSA.

123.    The aforementioned trade secrets are not generally known to the public and subject to reasonable efforts to maintain their secrecy by Yotrio, including requiring key employees to sign Agreements similar to one signed by Coop, and are kept or transferred via password-protected platforms.

124.    The trade secrets at issue also derive independent economic value, which Yotrio has spent many years cultivating and compiling.  A significant part of its value derives from the fact that it is not generally known by competitors in the industry who could obtain economic and unfair competitive value from its disclosure, all of which provide Yotrio with a competitive edge because the information allows Yotrio to allocate resources appropriately and to develop business and marketing plans for specific customers.

125.    The trade secrets at issue are the product of exceptional strategic processes, financial resources, and extensive time spent with Yotrio's customers.

126.   Defendants knew or should have known that Coop was, and continues to be, under a contractual duty or obligation to maintain the secrecy of Yotrio's trade secrets.

127.   Notwithstanding knowledge of the Agreement, 3i still hired Coop because of his direct knowledge of Yotrio's trade secrets, and Coop has misappropriated, used, and disclosed Yotrio's trade secret information to 3i in order to strategically target and solicit business from Top Customer and to undercut Yotrio's pricing.

128.   As a direct and proximate result of Defendants' unlawful actions, Yotrio has suffered damages, including lost profits, lost goodwill, diminished profit margins, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

129.   Defendants' continuing misappropriation of Yotrio's trade secrets and confidential information has been willful and malicious in light of Defendants' uncontroverted knowledge of Coop's Agreement.  Therefore, Yotrio is entitled to an award of exemplary damages and attorneys' fees pursuant to Cal. Civ. Code §§ 3426.3(c) and 3426.4.

WHEREFORE, Yotrio demands judgment in its favor for Defendants' violation of CUTSA, and requests actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Yotrio's trade secrets, confidential information and intellectual property, an Order directing Defendants to refrain from using such confidential information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief available under CUTSA as this Court deems just.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### THIRD CLAIM FOR RELIEF

### (<u>Breach Of Contract</u>)

### (<u>Against Jonathan Coop</u>)

130.    Yotrio hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1- 129 above.

131.    On or about February 13, 2012, Jonathan Coop entered into the Agreement with Yotrio.

132.    The Agreement is a valid and enforceable agreement under California law, does not restrict Coop's right to seek employment elsewhere, and is necessary to protect Yotrio's confidential business and customer information.

133.    Coop received adequate and sufficient consideration for entering into the Agreement, including continuous employment and substantial monetary salary commiserate with his extensive experience, as well as annual bonuses.

134.    Yotrio has fulfilled all of its obligations under the Agreement.

135.     "Proprietary Information," as defined by paragraph 4 of the Agreement, includes "…all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence."

136.    The Agreement further provides in relevant part that Coop "will hold in confidence and not disclose or, except within the scope of my employment, use any 'Proprietary Information.'"

137.    Coop also agreed that his obligations to hold Yotrio's confidential/proprietary information in confidence survives after the termination of his employment at Yotrio.

138.    During his employment, Coop had access to substantial confidential/proprietary and trade secret information related to, *inter alia*, (1) Yotrio

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

Furniture Designs; (2) Yotrio Market Intelligence Information; (3) Yotrio Confidential Customer Sales Information; and (4) Yotrio Customer Pricing.

139.   In addition, Coop has direct knowledge of Yotrio's customers, manufacturers, proprietary business strategies, marketing plans, and strategic targets, all of which are considered "Proprietary Information" by Yotrio as defined by the Agreement.

140.   Coop is aware of the significance of Yotrio's confidential and proprietary information based on his understanding of the terms, and execution of the Agreement.

141.   After leaving Yotrio's employ to work for 3i, a direct competitor of Yotrio, Coop improperly retained, used, and disclosed Yotrio's confidential/proprietary and trade secret information in order to bid for business with Top Customer.

142.   Plaintiff alleges upon information and belief that Top Customer is only the first of many strategic and systematic business targets that 3i plans to approach to secure business using Yotrio's confidential/proprietary and trade secret information.

143.   Coop also printed, without authorization, key documents belonging to Yotrio at Staples.com and has not returned such documents to Yotrio notwithstanding Coop's expressed agreement that he would return all such documents upon termination of his employment.

144.   Coop's retention, failure to return or destroy, and use and disclosure of Yotrio's confidential/proprietary and trade secret information to 3i, are direct breaches of the Agreement.

145.   As a direct and proximate cause of Coop's breach of the Agreement, Yotrio has suffered ascertainable damages, including lost profits, lost goodwill, diminished profit margins, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

146.   Coop also agreed, under Paragraph 9 of the Agreement, that any breach to the Agreement "will cause irreparable harm to [Yotrio] for which damages would not be an adequate remedy, and therefore, [Yotrio] will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond."

WHEREFORE, Yotrio demands judgment in its favor for breach of the Agreement and requests actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Yotrio's trade secrets, confidential information and intellectual property, an Order directing Defendants to refrain from using such confidential information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

## FOURTH CLAIM FOR RELIEF

### (Tortious Interference With Prospective Economic Relationship)

### (Against Jonathan Coop and 3i Products)

147.   Yotrio hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1-146 above.

148.   Yotrio has, and continues to have, a reasonable expectation of an economic and business relationship with Top Customer based upon its track record of supplying Top Customer with the Product Line X and other product lines over the past five years.

149.   Defendants were keenly aware of Yotrio's economic and business relationship with Top Customer based upon industry knowledge, and the fact that 3i has consistently sought to obtain Top Customer's business.

150.   Defendants acted intentionally and maliciously by leveraging Coop's knowledge and relationship with Top Customer and his existing network of suppliers/manufacturers, Yotrio's proprietary/confidential and trade secret

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

knowledge, and knowledge of new Yotrio business opportunities, to tailor 3i's approach to submitting bids to Top Customer and other potential customers.

151. Yotrio has learned that it is at risk, and will likely lose, the Product Line X business to 3i, which in turn has disrupted and will disrupt Yotrio's longstanding business relationship with Top Customer by, at the least, forcing Yotrio to lower its pricing bid in response to Defendants' wrongful actions, thereby disrupting Yotrio's business relationship with Top Customer.

152. Defendants acted willfully, maliciously, and with reckless disregard to the rights of Yotrio, entitling Yotrio to recovery of punitive damages in an amount to be determined at trial.

153. As a direct and proximate cause of Defendants' tortious conduct, Yotrio has suffered ascertainable damages, including lost profits, lost goodwill, diminished profit margins, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

WHEREFORE, Yotrio demands judgment in its favor on all counts and requests actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Yotrio's trade secrets, confidential information and intellectual property, an Order directing Defendants to refrain from using such confidential information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

## FIFTH CLAIM FOR RELIEF

### (<u>Tortious Interference With Contractual Relations</u>)

### (<u>Against 3i Products</u>)

154. Yotrio hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1- 153 above.

155. Yotrio and Coop had in place the Agreement, which is a valid and enforceable contract subject to California law.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

156.    3i knew or should have known that Coop was, and continues to be, under a valid and enforceable contractual obligation to maintain the secrecy of Yotrio's trade secrets and confidential/proprietary information.

157.    3i's intentional and deliberate conduct of soliciting and hiring Coop with the purpose of misappropriating Yotrio's trade secrets and proprietary/confidential information, without justification, and notwithstanding his contractual obligation under the Agreement, has caused actual disruption and breach of the Agreement by Coop, which constitutes a tort of intentional interference with contractual relations.

158.    As a direct and proximate cause of 3i's tortious conduct, Yotrio has suffered ascertainable damages, including lost profits, lost goodwill, diminished profit margins, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

159.    3i acted willfully, maliciously, and with reckless disregard to the rights of Yotrio, entitling Yotrio to recovery of punitive damages in an amount to be determined at trial.

WHEREFORE, Yotrio demands judgment in its favor on all counts and requests actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Yotrio's trade secrets, confidential information and intellectual property, an Order directing Defendants to refrain from using such confidential information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition – Cal. Bus. & Prof. Code § 17200 *et seq.*)

### (Against 3i Products)

160.    Yotrio hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1-159 above.

161.    3i solicited and hired Coop specifically because of his significant

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

1  knowledge of Yotrio's confidential/proprietary and trade secret information, which

2  he then disclosed to 3i for the expressed purpose of competing unfairly against Yotrio

3  to acquire the business from Top Customer and others.

4       162.   3i did, in fact, improperly use this confidential/proprietary and trade

5  secret information, including the confidential Top Customer document on new

6  business opportunities, to solicit Top Customer's business, particularly with respect

7  to the Product Line X.

8       163.   The knowing use of Yotrio's confidential/proprietary and trade secret

9  information to unlawfully solicit business from Yotrio's customers, including Top

10  Customer, constitutes a violation of California Bus. & Prof. Code § 17200 *et seq.*

11       164.   As a direct and proximate result of 3i's unfair business practices, 3i

12  Products has been unjustly enriched in an amount to be determined at trial, for which

13  Yotrio seeks restitution.

14       165.   3i's unfair competition and deceptive conduct have caused Yotrio

15  irreparable harm, there is no adequate remedy at law, and the unfair competition of

16  3i will continue to cause harm to Yotrio unless and until 3i is restrained by this Court.

17       WHEREFORE, Yotrio demands judgment in its favor on all counts and

18  requests actual damages to be proven at trial, and multiplied damages, and permanent

19  injunctive relief, including, but not limited to, the immediate return of all of Yotrio's

20  trade secrets, confidential information and intellectual property, an Order directing

21  Defendants to refrain from using such confidential information and to cease using

22  such information (and information derived from such information), and granting

23  attorneys' fees, and such other and further relief as this Court deems just.

24                    **PRAYER FOR RELIEF SOUGHT**

25       WHEREFORE, Yotrio respectfully requests the following relief against

26  Jonathan Coop, 3i Products, Inc., and all persons with knowledge or acting in concert

27  with Defendants:

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

1.    Enter an Order permanently enjoining Coop and 3i from using or disclosing Yotrio's confidential/proprietary and trade secrets information and to return all of the same;

2.    Award Yotrio damages, including punitive damages, and pre- and post-judgment interest, in an amount to be determined at trial;

3.    Award Yotrio its costs and attorneys' fees; and

4.    Provide any further relief as this Court deems just, appropriate, and equitable.

Dated:  December 4, 2018                    DENTONS US LLP


                                           By: /s/ Jae K. Park
                                               Jinshu John Zhang
                                               Jae K. Park

                                           Attorneys for Plaintiff
                                           YOTRIO CORPORATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT

## **JURY DEMAND**

Plaintiff hereby requests and demands a jury trial of all issues so triable.

Dated:  December 4, 2018          DENTONS US LLP


By: /s/ Jae K. Park
          Jinshu John Zhang
          Jae K. Park

Attorneys for Plaintiff
YOTRIO CORPORATION

109730265\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

CASE NO. 2:18-CV-10101
COMPLAINT